**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| NATALIE LEE, | ) |
| | ) |
| Plaintiff, | ) **Civil Action No.** 1:14CV91 TSE/IDD |
| v. | ) |
| | ) |
| MICHAEL (SOO YEOL) KIM, | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF NATALIE LEE**

I, Natalie Lee, declare as follows:

1. The statements set forth in this declaration are based on my personal knowledge and/or on documents and records maintained by NGSC, LLC or me personally in the regular course of business.

2. During my marriage to Phillip Yun ("Yun"), we owned and operated a number of restaurant businesses together.

3. Between 2000 and September 18, 2008, we owned, operated, and/or provided financial and other support (e.g., training and consulting services) to five restaurants operating under the name CAFE PHILLIPS.

4. In or around May 2001, Yun and I decided to open a restaurant at 1401 H Street, N.W., Washington, D.C. (the "1401 H Street Location").

5. With my daughter Jean Joo Lee's help, I came up with the CAFE PHILLIPS name and trademark. I proposed the name to Yun, and he was very happy with it. We agreed to adopt CAFE PHILLIPS as the name of the new restaurant.

6. In or around November 2001, we opened the CAFE PHILLIPS restaurant at the 1401 H Street Location.

7. The ownership of the CAFE PHILLIPS business at the 1401 H Street Location was originally split between Yun and I, on the one hand, and Michael Kim ("Kim"), on the other. Kim owned a 50% interest, and Yun and I owned a 50% interest.

8. From the time the CAFE PHILLIPS restaurant at the 1401 H Street Location opened in or around November 2001, until the business was sold in March 2003, I worked at the restaurant and managed its day-to-day operations.

9. In or around March 2003, Yun and I sold our 50% interest in the 1401 H Street Location to Kim.

10. Notwithstanding the sale of the 1401 H Street Location business, Yun and I retained ownership of the CAFE PHILLIPS trademark. We granted Kim a license to continue using the CAFE PHILLIPS trademark at the 1401 H Street Location, in exchange for a monthly license fee.

11. Until at least on or around September 2008, Yun personally collected the monthly license fee from Kim and deposited the payments into our joint checking account.

12. Kim is currently using the CAFE PHILLIPS trademark in connection with deli, cafe, and catering services at the 1401 H Street Location.

13. In or around November 2002, I decided that I wanted to open and operate another CAFE PHILLIPS restaurant.

14. In or around January 2003, Yun and I obtained a lease for the new restaurant at 50 F Street N.W., Washington, D.C. (the "50 F Street Location").

15. The business at the 50 F Street Location was incorporated in or around March 27, 2003 in the District of Columbia under the name NGSC, LLC. A true and correct copy of the articles of organization for NGSC, LLC are attached as Exhibit A.

16. Yun and I initially owned 100% of NGSC, LLC, which owned the CAFE PHILLIPS business at the 50 F Street Location.

17. In or around May 2003, the CAFE PHILLIPS restaurant at the 50 F Street Location opened. From its opening to the present, I have continuously worked at and managed the day-to-day activities of the restaurant at the 50 F Street Location.

18. For many years, Yun and I used revenues from the operation of the 50 F Street Location to open additional CAFE PHILLIPS restaurants. We also used the 50 F Street Location to train new employees before they began working at other CAFE PHILLIPS restaurants. I personally trained several owners of CAFE PHILLIPS restaurants and a number of their employees.

19. Since at least May 2003 to the present, the CAFE PHILLIPS trademark has been used and promoted in connection with deli, cafe, and catering services at the 50 F Street Location.

20. The "signature" of the CAFE PHILLIPS restaurant at the 50 F Street Location has always been our on-the-spot hand-carving of fresh deli meats for made-to-order sandwiches and salads. All of the other CAFE PHILLIPS restaurants also feature these carving services.

21. The CAFE PHILLIPS restaurant at the 50 F Street Location is known for its quick and efficient service. The restaurant is a popular lunch spot for the Washington, D.C. business-lunch crowd.

22. The CAFE PHILLIPS restaurant at the 50 F Street Location has been commercially successful, having generated millions of dollars in revenues over the years. In the 10+ years the restaurant has been in business, it has developed a strong and favorable reputation for offering fresh, high-quality food, as well as exceptional and fast service. As a result of the long use and promotion of the CAFE PHILLIPS trademark in connection with the business, that trademark has acquired substantial goodwill.

23. I currently own 100% of NGSC, LLC and the CAFE PHILLIPS restaurant operating at the 50 F Street Location. I have owned 100% of those businesses since they were conveyed to me through a marital settlement agreement with Yun ("MSA") in 2008.

24. In or around November 2003, Yun and I opened a CAFE PHILLIPS restaurant at 1201 Pennsylvania Avenue, N.W., Washington, D.C. (the "1201 Pennsylvania Avenue Location"). Yun and I originally owned 100% of this business.

25. For the first six months the Pennsylvania Avenue Location was open, Yun and I paid the payroll and operating expenses of that restaurant using revenues from the CAFE PHILLIPS restaurant at the 50 F Street Location. I was managing and operating the 50 F Street Location at this time.

26. Yun and I hired a manager to oversee the day-to-day operations at the 1201 Pennsylvania Avenue Location.

27. In or around December 16, 2006, Yun and I sold the CAFE PHILLIPS restaurant at the 1201 Pennsylvania Avenue Location to Joseph & Son, Inc. ("JSI"). However, Yun and I retained ownership of the CAFE PHILLIPS trademark.

28. We granted JSI a license to continue using the CAFE PHILLIPS trademark for the 1201 Pennsylvania Avenue Location, in exchange for a monthly license fee. Until at least in

or around September 2008, Yun personally collected the license fee from JSI and deposited the payments into our joint checking account.

29. On or around June 2004, Rachel Park d/b/a Rachel's Place ("Rachel's Place") opened a CAFE PHILLIPS restaurant at 650 Massachusetts Avenue, N.W. Washington D.C. ("650 Massachusetts Avenue Location").

30. Yun and I granted Rachel's Place permission to open the CAFE PHILLIPS restaurant at the 650 Massachusetts Avenue Location, and we licensed the CAFE PHILLIPS trademark to Rachel's Place, in exchange for a monthly license fee. Until at least in or around September 2008, I personally collected the license fee from Rachel's Place and deposited the payments into our joint checking account.

31. In or around 2005, Yun and I opened another CAFE PHILLIPS restaurant at 1776 G Street, N.W., Washington D.C. (the "1776 G Street Location"). This restaurant was incorporated on or around July 20, 2005 in the District of Columbia under the name P.S. Enterprise, LLC. Yun and I initially owned 100% of this business. We hired a manager to oversee the day-to-day operations at this location.

32. On or around September 6, 2008, Yun and I had an initial discussion about dividing our marital assets. Yun proposed that we sell all of our marital assets, including the CAFE PHILLIPS business, and divide the proceeds 50/50. I insisted, however, on keeping the CAFE PHILLIPS business so that I could support myself. I offered to "buy out" Yun's interest in the CAFE PHILLIPS business by paying him with my 50% interest in the marital residence. We ultimately agreed that I would receive the CAFE PHILLIPS business and Yun would receive the marital residence.

33. On or around September 18, 2008, at our home, Yun provided me with the MSA. The MSA had been prepared by a lawyer hired by Yun. I did not know that Yun had asked a lawyer to prepare the MSA. I did not hire a lawyer to assist with reviewing or negotiating the MSA, and I did not provide any input on the preparation of the MSA.

34. That same day, Yun asked me to sign the MSA. I did not read the MSA. Yun read me some parts of the MSA, but I later realized that he did not read the entire MSA. Yun told me that under the MSA I would be required to pay him a license fee for use of the CAFE PHILLIPS trademark. I refused to sign the agreement with that provision. I told Yun that I would not license the CAFE PHILLIPS trademark for a business that I owned. To address my objection, we struck Paragraph 22(a)(3), which would have required me to pay Yun a monthly license fee for use of the CAFE PHILLIPS trademark. I did not make any other changes to the MSA, and Yun and I both signed the MSA. A true and correct copy of the MSA is attached as Exhibit B. At the time the MSA was executed, the CAFE PHILLIPS restaurant at the 440 First Street Location did not exist.

35. Since Yun and I entered into the MSA, I have continuously used the CAFE PHILLIPS trademark in connection with restaurant services at the 50 F Street Location.

36. On or around November 6, 2009, Yun and I executed an amendment to the MSA ("AMSA"). A true and correct copy of the AMSA is attached as Exhibit C.

37. In or around December 27, 2012, Yun sued me in the Circuit Court of Fairfax County for breach of the MSA ("Fairfax Case"). I asserted a counterclaim against Yun for breach of the AMSA. Yun was deposed in the Fairfax Case.

38. Attached as Exhibit D is a true and correct copy of Yun's complaint in the Fairfax Case.

39. Attached as Exhibit E is a true and correct copy of my answer and counterclaim in the Fairfax Case.

40. Attached as Exhibit F is a true and correct copy of excerpts from a transcript of the deposition of Yun taken on May 14, 2013 in the Fairfax Case.

41. Attached as Exhibit G is a true and correct copy of the transcript from the final hearing in the Fairfax Case.

42. Attached as Exhibit H is a true and correct copy of the final decision in the Fairfax Case.

43. In or around January 2014, Kim came to my restaurant at the 50 F Street Location and told me that he was getting ready to open a CAFE PHILLIPS restaurant at 440 First Street N.W., Washington D.C. ("440 First Street Location"). I told Kim he could not open a restaurant there because doing so would violate my trademark rights and harm my business. I told Kim that many of my customers came to the 50 F Street Location from the area around 440 First Street, and that I was doing quite a bit of catering in that area.

44. The 440 First Street Location is less than two blocks from my CAFE PHILLIPS restaurant at the 50 F Street Location.

45. In or around the second week of January 2014, Kim came to my home and again asked my permission for him to open a CAFE PHILLIPS restaurant at the 440 First Street Location. I reiterated to Kim that he could not open the 440 First Street Location because it would ruin my business.

46. In or around the third week of January 2014, Kim came to my home again and told me that that he was going to withdraw from the 440 First Street Location by having Yun take his ownership interest in that location and that he would agree to sign a trademark license

agreement from me for the 1401 H Street Location. Kim promised that he would confirm his withdrawal from the 440 First Street Location and confirm that he would sign an agreement to license the use of the CAFE PHILLIPS mark from me for the 1401 H Street NW Location within one week. Kim, however, did not get back to me. Nor did he respond to my phone calls or voicemail.

47. The CAFE PHILLIPS restaurant at the 440 First Street Location has not yet opened. However, in or around January 2014, a prominent "Coming Soon Cafe Phillips" sign was displayed in the window of the restaurant at the 440 First Street Location. Since that time, we have received questions and comments relating to the 440 First Street Location from customers at my 50 F Street Location virtually every day, and often multiple times a day. Customers have asked questions such as: "When are you going to open up your new location [at 440 First Street]?" and "Are you going to close this [50 F Street] location and move to the new location?" Customers have also called our 50 F Street Location asking when the new CAFE PHILLIPS restaurant at the 440 First Street Location will be opening. Customers have also asked why we [50 F Street Location] are opening another location so close to our current location.

48. Because of the close proximity of the 440 First Street Location to my business, I will lose customers and revenues if the 440 First Street Location opens. I will also lose control over the goodwill and reputation of my business, which I have worked very hard to develop over the course of a decade.

49. I have numerous customers who walk to my restaurant at the 50 F Street Location from the area surrounding the 440 F Street Location and the office building that houses the 440 First Street Location. Additionally, I have provided catering services to

customers in the building that houses the 440 First Street Location.  I also have prospective customers in the 440 First Street area.

50. Convenience is very important to my customers, many of whom are looking for a quick lunch during their work day.  If the 440 First Street Location opens, many of my customers and prospective customers will undoubtedly choose to go to that location instead of the 50 F Street Location if it is closer to their workplace or daytime activity.

51. On or around August 13, 2013, I received a letter from Yun's counsel relating to the MSA.  A true and correct copy of the letter is attached as Exhibit I.

52. Attached as Exhibit J is a true and correct copy of U.S. Trademark Registration No. 4493256.

53. Attached at Exhibit K is a true and correct copy of U.S. Application No. 85465171, which I filed at the Patent and Trademark Office ("PTO"), with the assistance of counsel on or around November 4, 2011.

54. At the time I filed U.S. Application No. 85465171, I believed I owned CAFE PHILLIPS trademark and I did, in fact, own that trademark.  I continue to believe that I own the CAFE PHILLIPS trademark.

55. I believed I was the owner of the CAFE PHILLIPS trademark at the time I filed U.S. Application No. 85465171because, among other things, Paragraph 22(a)(3) was struck from the MSA, which would have required me to license the CAFE PHILLIPS trademark from Yun.  I believed that this change and the MSA and AMSA in general meant that I alone owned the trademark and had the right to seek federal registration of the trademark.  Yun also knew that I thought that I was the owner of the trademark.

9

56. My statements to the PTO that I believed I was the owner of the CAFE PHILLIPS trademark were true. I filed U.S. Application No. 85465171 to protect the CAFE PHILLIPS trademark, not with any alleged intent to deceive the PTO.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct under 28 U.S.C. § 1746.

Date:   June 16, 2014                            _____
                                                               Natalie Lee

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing DECLARATION OF NATALIE LEE has been served via First Mail Class this 16th day of June, 2014 upon the following counsel of record:

>Jason J. Huh, VSB 74483
>Law Office of Jason J. Huh, PLLC
>4101 Chain Bridge Road, Suite 209
>Fairfax, Virginia 22030
>
>Jonathan A. Schiffrin, VSB 67542
>Schiffrin & Longo, P.C.
>8201 Greensboro Drive, Suite 300
>McLean, Virginia 22102

>By: /s/Anjie Vichayanonda
>David M. Kelly
>Stephanie H. Bald
>Anjie Vichayanonda (Va. Bar. #85471)
>
>Kelly IP, LLP
>1330 Connecticut Ave., N.W. Suite 300
>Washington, D.C. 20036
>Telephone: (202) 808-3570
>Fax:          (202) 354-5232
>E-mail: david.kelly@kelly-ip.com
>         stephanie.bald@kelly-ip.com
>         anjie.vichayanonda@kelly-ip.com
>
>**ATTORNEYS FOR PLAINTIFF NATALIE LEE**